IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARTIN BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-565-GMB |
| | ) | [wo] |
| JUNE BARRETT and PERRY FULTON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now before the court is a Motion for Preliminary Injunction filed by Plaintiff Martin Brooks (Doc. 22), a Motion for Summary Judgment filed by Defendants June Barrett and Perry Fulton (Doc. 27), a Motion to Compel filed by Brooks (Doc. 35), and a Motion for Sanctions filed by the defendants. Doc. 43.

Brooks filed this lawsuit on June 7, 2018, alleging several state and federal claims arising out of his attempt to have a barbeque sauce sold to public schools in Alabama in 2012. Doc. 1. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Docs. 16 & 17.

The court granted in part and denied in part a previous motion to dismiss and gave Brooks leave to file an amended complaint clarifying whether he intended to seek prospective injunctive relief. Brooks filed an amended complaint seeking prospective injunctive relief and the case has proceeded against Barrett and Fulton in their individual

and official capacities.

After careful consideration of the parties' submissions and the applicable law, for reasons to be discussed below, the motion for summary judgment is due to be GRANTED as to the federal claims, the motion for preliminary injunction is due to be DENIED as to the federal claims, and the court will decline to exercise supplemental jurisdiction over the remaining state-law claims. The motions to compel and for sanctions also are due to be DENIED.

## I.    JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and § 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II.    FACTS

The facts viewed in a light most favorable to the non-movant are as follows:

Brooks makes a barbeque sauce which he identifies in his affidavit as "Dat Good Sauce." Doc. 49-2 at 2. Brooks contacted Fulton with the Child Nutrition Program ("CNP") for the State of Alabama Department of Education ("ALDOE") in February 2011 about selling his sauce to the department. Doc. 49-2 at 3. Fulton told him to call back in November 2011, and Brooks did. Doc. 49-2 at 3. Fulton did not inform Brooks of the "bid nomenclature" or that the bid process involved the Department of Finance. Doc. 49-2 at 3.

Fulton alleges in an affidavit that there is a three-step prequalification process before submitting a bid in response to an ALDOE invitation to bid: (1) an initial review of the product for conformance to specifications, (2) product advisory committee review, and

(3) student taste testing. Doc. 29-1 at 3. Products to be placed on bids must receive at least a 75% approval rating by students in at least three or four school systems chosen for testing. Doc. 29-1 at 3.

Brooks received a letter from Fulton on November 7, 2011. Doc. 49-2 at 3. The letter, which Brooks provided to the court, states that the State of Alabama Statewide Purchasing Committee had scheduled a time to meet with Brooks at 2:00 p.m. on December 7, 2011. Doc. 49-2 at 11. The letter sets out what Brooks must provide at the meeting and that the meeting is the second step in the "possibility of approving your products for inclusion in the upcoming State of Alabama Child Nutrition Program bid." Doc. 49-2 at 11. Brooks participated in the meeting and was informed that he could proceed to the next step, which is taste testing by students. Doc. 49-2 at 12. A letter to Brooks set out the names of the Child Nutrition Program ("CNP") Directors and the phone numbers at Russellville City Schools, Sheffield City Schools, Geneva County Schools, Hoover City Schools, Wilcox County Schools, and Jefferson County Schools, and told Brooks to contact each school to make arrangements for providing sauce for the taste tests. Doc. 49-2 at 12. Brooks states in the affidavit that he dropped the sauce off with the CNP Directors but had not been provided information relating to the specific contract under bid on or how long the contract would last. Doc. 49-2 at 4.

According to Fulton, Dat Good Mustard Barbeque Sauce was tested in six school districts, the school districts provided him with the results of the taste tests, and the "taste test results revealed Mr. Brooks' product did not receive at least a 75% approval rating by students in the school districts chosen for testing. Therefore, Dat Good Mustard BBQ

sauce was not-prequalified for the next invitation to bid." Doc. 29-1 at ¶ 18.

On February 28, 2012, Brooks sent an email to Fulton requesting the test results, and on March 1, 2012 he received a package with the manual for procurement for CNP in the mail. Doc. 49-2 at 5. He again contacted Fulton to request the complete taste test results but he received incomplete testing documentation. Doc. 49-2 at 5.

On April 2, 2013, Brooks filed a complaint with the Office of Inspector General. Doc. 49-2 at 6. Brooks received a letter from Stephen G. Hortin, Deputy Director of the School and Family Nutrition Program with the United States Department of Agriculture ("USDA"), which, according to Brooks, informed him that he would be allowed to have his product re-tested. Doc. 49-2 at 6.

On July 20, 2013, Barrett received a letter from Kirk Farquharson of the USDA stating that the USDA had evaluated Brooks' complaint and determined that "the procedures were followed except for two elements." Doc. 30-11. The USDA said that the ALDOE could not provide documentation that Brooks had been formally notified of the taste test results and could not provide documentation that the ALDOE notified Brooks of his appeal rights, so the USDA expected the ALDOE to allow Brooks to submit his product again for taste testing in the 2013–14 school year. Doc. 30-11.

Brooks then contacted several schools and could not get a "clear verification" that the taste tests had been conducted so he asked for an investigation from Program Specialist Michelle Morris with the USDA. Doc. 49-2 at 6. In 2016, he received notice that the Office of Inspector General would be reopening an investigation, but he never received a status update or outcome of any investigation. Doc. 49-2 at 8. In 2017, Brooks received an

electronic mail message from Swanson Hall of the USDA that informed him that the taste test was "valid." Doc. 49-2 at 8.

Brooks states in his affidavit that he spoke to a "few principals from some of the schools" who told him that no test had been conducted at their schools, so he contacted legal counsel whose investigator spoke with "several current and retired principals and they could never recall any of those specific schools conducting a food test." Doc. 49-2 at 8. The affidavit of the investigator states that he contacted "all of the schools listed" and "could not get a clear 'yes' we conducted a food test in that year." Doc. 49-4 at 2.

## III.    STANDARDS OF REVIEW

### A.    Motion for Preliminary Injunction

A district court may grant injunctive relief if the movant shows (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to the four requisites." *Id.*

### B.    Summary Judgment

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears

the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both a party "asserting that a fact cannot be" and a party asserting that a fact is genuinely disputed must support their assertions by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A)–(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**C.    Motion to Compel**

On notice to other parties and all affected persons, a party may move for an order compelling the disclosure of discovery. Fed. R. Civ. P. 37(a)(1). The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). "A motion to compel discovery is committed to the discretion of the trial court." *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

If a district court denies a motion to compel discovery, the court must require the movant, the attorney filing the motion, or both, to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, but the court must not order the payment if the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B).

**D.    Rule 11 Sanctions**

A district court may impose sanctions under Rule 11 when a party files a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success . . . ; [or] (3) is filed in bad faith for an improper purpose." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1341 (11th Cir. 2018).

## IV.  DISCUSSION

The court first addresses the pending motion to compel, then will turn to the motions for summary judgment and preliminary injunction, and finally to the motion for sanctions.

## A.      Motion to Compel

Brooks filed the motion to compel, identifying several discovery requests he served on Barrett and Fulton.  In opposing that motion, Barrett and Fulton point out that the motion for summary judgment they filed in this case was filed before the entry of a Rule 26 scheduling order.  They state, therefore, that pursuant to Rule 34 the motion to compel is premature because responses are not due until after the Rule 26(f) conference.  They request fees arising from their defense of the motion to compel.

In response to a different motion, Brooks concedes that it was premature to file the Motion to Compel. Doc. 44 at 2 (stating that "[t]hough Plaintiff was premature in filing the Motion to Compel, (See Doc. 35) Plaintiff argues that the act itself does not rise to the surface of being sanctioned for the following reasons").  Therefore, the motion to compel is due to be DENIED. *See* Fed. R. Civ. Proc. 34.  Because Brooks conceded that his motion was premature in a filing made on the court's deadline for the Defendants' response to the motion to compel, the court finds that the circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B).

The court also notes that Brooks repeatedly has referred to his pending motion to compel discovery in connection with briefing on other motions.  For example, without leave of court, Brooks filed a document entitled a Memorandum of Law for Support of "Sneak Peek" to Discovery. Doc. 57.[1]

---

[1]  Because this memorandum was filed without leave of court, the court has not considered it, other than to note that it does not comply with Rule 56(d) and that Brooks refers within it to a motion to stay discovery even though there is no such pending motion.

The court explained in a previous Order that Brooks had not complied with Fed. R. Civ. P. 56(d). Doc. 42 at 1. The court gave Brooks additional time in which to file a new brief and to comply with Rule 56. Brooks filed a new brief, but did not seek relief pursuant to Rule 56(d). Brooks' filings, including his motion to compel and his request for a "sneak peek" at discovery do not comply with Federal Rule of Civil Procedure 56(d) and, although given an opportunity to do so, he has not attempted to demonstrate with an affidavit the reasons he cannot present facts essential to his opposition to the motion for summary judgment. Fed. R. Civ. P. 56(d); *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) (stating that the "motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment"). Accordingly, the court will proceed with consideration of the motion for summary judgment.

**B.      Motion for Summary Judgment and Motion for Preliminary Injunction**

*1.      Federal Claims*

Brooks has asserted federal claims against Barrett and Fulton in their official and individual capacities, including a claim brought pursuant to 42 U.S.C. § 1983 for violation of the due process clause of the Fourteenth Amendment and a claim for violation of 2 C.F.R. § 200.319. The court begins with the due process claim and then will turn to the regulatory claim.

**a.      Claim for Violation of Due Process**

Barrett and Fulton argue that they are entitled to summary judgment in their official

and individual capacities. With respect to the claims against them in their individual capacities, they argue that they are entitled to qualified immunity because Brooks has failed to establish a claim for violation of due process.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). There does not appear to be any dispute in this case that Fulton and Barrett were acting within their discretionary authority. Government officials performing discretionary functions generally are granted qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Section 1983 claims for deprivation of procedural due process have three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). A procedural due process violation is not complete "unless and until the State fails to provide due process." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).

The process that is due before a property interest may be deprived is defined by

reference to federal constitutional law, not to state procedural rules. *See, e.g., Maddox v. Stephens*, 727 F.3d 1109, 1124 n. 15 (11th Cir. 2013) ("Of course, the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights."). The Eleventh Circuit has stated that "the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes." *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987). Therefore, "the procedural component of the Due Process Clause does not require the States to comply with state-created procedural rules." *Gissendaner v. Comm., Ga. Dept. of Corr.*, 794 F.3d 1327, 1330 (11th Cir. 2015).

Under § 1983, a disappointed bidder may have a constitutionally protected property interest in the award of a contract if that interest is provided by "existing rules or understandings that stem from an independent source such as state law." *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1242 (11th Cir. 1992). That is, although federal law governs whether there is a due process right, state law may establish the property interest protected by the due process clause. *Id.* Alabama bid law, however, "was designed to benefit the public, [and] creates no enforceable rights in the bidders." *Ericsson GE Mobile Comms., Inc. v. Motorola Comms. & Elecs., Inc*., 120 F.3d 216, 221 (11th Cir. 1997) (quotation and citation omitted). In other words, "an unsuccessful bidder has no 'right or expectancy to insist upon the award of a contract.'" *Vinson Guard Serv., Inc. v. Ret. Sys. of Ala.*, 836 So. 2d 807, 810–11 (Ala. 2002) (citations omitted).

Federal district courts applying Alabama bid laws in the context of federal due process claims have determined that because Alabama law does not create an entitlement to a bid or "mandate an award of a contract under any circumstances," an unsuccessful bidder does not have a protected property interest. *Clark Const. Co. v. Pena*, 930 F. Supp. 1470, 1487 (M.D. Ala. 1996); *Urban Sanitation Corp. v. City of Pell City*, 662 F. Supp. 1041, 1046 (N.D. Ala. 1986). Those courts have reasoned that "unsuccessful bidders for contracts of certain state and local agencies for which competitive bidding is required, as here, do not have a constitutionally protected property interest resulting from Alabama law." *Clark Const. Co.*, 930 F. Supp. at 1487. This court is persuaded by the reasoning of these courts and concludes that Brooks "does not have a constitutionally protected property interest resulting from state law." *Urban Sanitation Corp.*, 662 F. Supp. at 1046. Therefore, Brooks does not have an interest protected by the federal due process clause. Because there is no federally-protected property interest, summary judgment is due to be GRANTED to Barrett and Fulton for all claims asserted against them in their individual capacities.

Without a violation of due process, summary judgment also is due to be awarded to Barrett and Fulton in their official capacities. *See R.E. Grills Const. Co. v. Ala. Dept. of Transp.*, 198 F. Supp. 2d 1297, 1301 (N.D. Ala. 2002) (finding no procedural due process violation and therefore no claim against the defendant in his official capacity).

Alternatively, the court notes that Barrett and Fulton argue that even if there were any procedural deprivations during the bidding process involving Brooks, which they deny, Brooks was provided appropriate procedural remedies by being allowed to resubmit a

standard product form and to have his submitted for a second student taste test.[2]

As noted earlier, a procedural due process violation is not complete "unless and until the State fails to provide due process." *McKinney*, 20 F.3d at 1557. The state may cure a procedural deprivation by providing a later procedural remedy, and it is only when the state refuses to provide a process sufficient to remedy the procedural deprivation that a constitutional violation arises. *Id.*

The Supreme Court of Alabama has addressed the availability of remedies for violations of state bid law. *See Crest Const. Corp. v. Shelby Cty. Bd. of Educ.*, 612 So. 2d 425, 432 (Ala. 1992). The court has explained that the "legislature has provided a remedy, albeit a limited one." *Id.* For the purpose of a due process analysis, "the state procedure need not provide all the relief available under section 1983." *R.E. Grills Const. Co.,* 198 F. Supp. 2d at 1301. This court concludes, therefore, that even assuming there is a property interest sufficient to invoke constitutional protection and assuming state procedural statutes were violated, Brooks has not shown that there is no adequate state remedy. *See Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1314 (11th Cir. 1995), *modified*, 77 F.3d 1321 (11th Cir. 1996) (stating that "EMCs could have filed actions in state court pursuant

---

[2] The court notes as an aside that Barrett and Fulton provide evidence of a July 2013 letter in which Barrett invited Brooks to have his product retested by returning a product information form. Doc. 30-12. Barrett states in an affidavit that Brooks did not return the form. Doc. 29-2 at ¶ 15. Brooks' discussion of this evidence in his brief is an attempt to dispute the statement by Barrett by comparing it to a letter she sent Brooks in March 2017 in which she states that she is providing the results of the taste tests and informs Brooks that the ALDOE does not have an appeal process when a product is determined unacceptable. Doc. 49-11. In Brooks' view, because Barrett does not mention the missed retest opportunity, she contradicts her affidavit. The court does not agree. Not mentioning the missed opportunity to retest in a letter sent several years later does not call into question the affirmative evidence that the opportunity was extended in 2011.

to O.C.G.A. § 50–5–79 for the purpose of rescinding the contracts with Georgia Power and/or to recover their bid preparation costs"). The court concludes, therefore, that there is no constitutional violation on this alternative basis and that Barrett and Fulton are entitled to summary judgment on the procedural due process claim in their individual and official capacities. *See R.E. Grills Const. Co.*, 198 F. Supp. 2d at 1301 (finding that the State of Alabama provided a remedy so there was no procedural due process violation and therefore no claim for prospective injunctive relief).

Summary judgment, therefore, is due to be GRANTED as to all claims against Barrett and Fulton for violation of federal due process in their individual and official capacities.

### b. Claim for Violation of 2 C.F.R. § 200.319

Brooks alleged in the amended complaint that Barrett and Fulton violated 2 C.F.R. § 200.319 in various ways. Doc. 21.[3] Brooks' argument in opposition to the motion for summary judgment on the claim for violation of 2 C.F.R. § 200.319, however, is solely that the "food taste test not being conducted fairly, or at all violates this federal law." Doc. 49 at 28. Therefore, this is the only argument the court will address. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (stating that a ground not pressed in the district court in opposition to a motion for summary judgment is

---

[3] The Amended Complaint cites "2 C.F.R. § 200.319(1), (7)(2)(2)(d)," which is not a regulatory section. Doc. 21 at 10.

to be treated by the district court as abandoned).[4]

Brooks' argument appears to be that Barrett and Fulton violated the federal regulation because they did not comply with the taste test requirement, which was a requirement for being a qualified bidder. This appears to be an alleged violation of the portion of the regulation providing that the "non-Federal entity must ensure that all prequalified lists of persons, firms, or products which are used in acquiring goods and services are current and include enough qualified sources to ensure maximum open and free competition. Also, the non-Federal entity must not preclude potential bidders from qualifying during the solicitation period." 2 C.F.R. § 200.319(d).

In order for a cause of action under § 1983 to exist for the violation of a federal statute, a plaintiff must assert a violation of a federal right, not merely a violation of federal law. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Furthermore, federal rights are not created either by regulations "'alone' or by any valid administrative interpretation of a statute creating some enforceable right." *Harris v. James*, 127 F.3d 993, 1008 (11th Cir. 1997). A plaintiff can show the violation of a federal right if a statute "confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right." *Id.* at 1008–09. "If the regulation defines the content of a statutory

---

[4] In his brief, Brooks also cites to 7 C.F.R. § 210.23(c), which, as Barrett and Fulton point out, was not pleaded in the amended complaint. Doc. 21. The court has not considered this argument. *See Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (stating that "a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment").

provision that creates no federal right under the three-prong test,[5] or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision," the regulation is too far removed from Congressional intent to constitute a "federal right" enforceable under § 1983. *Id.*

Brooks has not attempted to demonstrate that 2 C.F.R. § 200.319 is linked to a statute which confers a right. *Cf. Pueblo of Pojoaque v. New Mexico*, 214 F. Supp. 3d 1028, 1111 (D.N.M. 2016), *aff'd*, 863 F.3d 1226 (10th Cir. 2017) (finding no violation of federal law where the plaintiffs identified no unambiguous right conferred by the relevant statute).

The regulation Brooks invokes was promulgated pursuant to 31 U.S.C. § 503, which is a statute that sets forth the government-wide management policies for executive agencies. 2 C.F.R. § 200.319. Applying the analysis required in *Harris*, 127 F.3d at 1009, the regulation does more than flesh out a statute creating a federal right because 31 U.S.C. § 503 does not contain any provisions regarding the bidding of contracts. The regulation, on the other hand, speaks to competition in bidding and, therefore, "imposes new and 'distinct obligations' not found in the statute itself." *Kissimmee River Valley Sportsman Ass'n v. City of Lakeland*, 250 F.3d 1324, 1327 (11th Cir. 2001) (stating that "[a]lthough the Act may well contemplate improvement of access generally for recreational boating, it does not create an equal access right," and therefore the regulation is too far removed from

_____

[5] The test asks "(1) is the provision intended to benefit the plaintiff; (2) does the provision impose a binding obligation on the governmental unit; (3) is the interest 'too vague and amorphous' for judicial enforcement?" *Harris*, 127 F.3d at 999 n.7.

Congressional intent to create an enforceable right). The court concludes that Brooks' claim that Barrett and Fulton failed to conduct a taste test of his product does not assert a violation of a federal right, and that summary judgment is due to be GRANTED as to the regulatory claim against Barrett and Fulton in their individual and official capacities on that basis.

Alternatively, even assuming that Brooks can proceed on his regulatory claim as a a violation of a federal right, in the face of the qualified immunity defense asserted by the individuals he still must show that there is a violation of clearly established law. Qualified immunity can apply to claims for violations of federal statutory law as well as constitutional law. *Harlow*, 457 U.S. at 818.

Brooks bases his argument that the regulation was violated because no taste test was conducted in part on evidence in the form of an affidavit of investigator Michael Dixon. Dixon states that he contacted all of the schools listed as having conducted a taste test of Dat Good Mustard Barbecue Sauce to determine if any food taste test was conducted and "could not get a clear 'yes' we conducted a food test in that year." Doc. 49-3. Dixon does not identify the person with whom he spoke at most of the schools. He states that he contacted someone at Hoover High School who said that the school had opted out of the Child Nutrition Program. Doc. 49-3 at 3. Dixon also provides a transcribed voicemail from a principal whom he identifies as Nicky Bennett and who states that no taste test was conducted at Geneva City High School. Doc. 49-3 at 3. Dixon finally states that he believes that the defendants' exhibit demonstrating the taste test results is false because he "contacted the two schools, and was informed that no such taste test was conducted." Doc.

49-3 at 4.

Brooks also has stated in his own affidavit that he spoke with "a few principals from some of the schools, who stated that no such test was conducted at their school." Doc. 49-2 at 8. Brooks further argues that Barrett and Fulton have not provided the actual documents used during the test or the forms used by the child nutrition specialist. He questions the forms submitted, arguing that they did not originate in the schools. He further argues that documents regarding testing should be in the possession of the Barrett and Fulton and should have been produced. Additionally, Brooks argues that none of the affidavits provided by Barrett and Fulton contain a statement that the affiant was present and witnessed the taste test for the schools.

Barrett and Fulton argue that Brooks' evidence cannot create a question of fact as to whether a taste test was conducted in light of their affirmative evidence that taste tests were conducted. Specifically, Fulton has stated in an affidavit that Brooks' Dat Good Mustard Barbeque Sauce was tested in six school districts. Doc. 29-1 at 6. Barrett and Fulton provide exhibits to the court which contain the schools' taste test forms for products including Dat Good Mustard Barbeque sauce (Docs. 30-2 & 30-6) and product testing summary sheets. Docs. 30-3, 30-4, 30-5, 30-7 & 30-8.

In response to Dixon's affidavit regarding Hoover High School, Barrett and Fulton provide evidence from Pattie King ("King"), the Child Nutrition Program Manager from Hoover High School, who states that Hoover High School had conducted taste tests for the Department of Education in the past, but opted out of participating in the CNP program as of 2017. Doc. 52-1 at 2. King affirmatively states, however, that in 2012, Dat Good

Barbecue Sauce was served to students at Hoover High School as part of a student taste test. Doc. 52-1 at 3. Barrett and Fulton also state that the voicemail relied on by Dixon is from Mickey Bennett who is the principal of Geneva City High School. Doc. 52-2. Barrett and Fulton provide the court with the 2011 letter requesting that Dat Good Barbeque Sauce be tested in Geneva County schools, not at Geneva City High School. Doc. 29-13 at 4. Barrett and Fulton state that the investigator inquired of the wrong Geneva school system.

The court finds it to be significant that Fulton affirmatively states in his affidavit that the school districts provided him with the results of the taste tests, and that those "taste test results revealed Mr. Brooks' product did not receive at least a 75% approval rating by students in the school districts chosen for testing. Therefore, Dat Good Mustard BBQ sauce was not-prequalified for the next invitation to bid." Doc. 29-1 at ¶ 18. Brooks' insistence that there should be better documentation of the taste tests does not undermine this statement by Fulton that he received the test results and relied on them in deciding that Brooks' product was not prequalified. *Cf. Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (finding decisionmakers' good faith belief in truth of reports to be sufficient).

Brooks also does not refute the evidence provided with regard to Hoover High School and Geneva County Schools that undermines Dixon's claim that no tests were conducted there. While Brooks has stated in his own affidavit that he spoke to some principals, Doc. 49-2 at 8, he does not state in the affidavit that he asked them about a taste test during the relevant year, or that he spoke to principals who were with the schools during the relevant time period. *See Tucker v. Benteler Auto. Ala., Inc*., 2009 WL 531875,

at *6 (M.D. Ala. Mar. 3, 2009) (stating that "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment"). To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Viewing all evidence in the light most favorable to Brooks, and considering the documentary evidence of taste tests results (Docs. 30-2 to -8), the court cannot conclude that there is sufficient evidence to create a genuine dispute of fact as to whether the taste tests were conducted. *Cf. Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249 (11th Cir. 2004) (holding that plaintiff's affidavit was not sufficient to create a question of fact where it was "contradicted by the undisputed, clearly demonstrated, photographed physical evidence"); *Powell v. Colvin*, 2016 WL 1644353, at *2 (N.D. Ala. Apr. 26, 2016) (stating that testimony was contradicted by contemporaneous documentary evidence and so was not substantial evidence that a reasonable jury could rely upon). And, significantly, there is no evidence before the court to create a question of fact as to whether taste test results were submitted to the ALDOE and relied upon by the ALDOE in determining that Brooks was not prequalified as a bidder. Accordingly, the court cannot conclude that there is a sufficient evidence to create a genuine dispute of material fact regarding the taste tests. *See Celotex Corp.*, 477 U.S. at 322.

The court notes, however, that there is evidence before it that the USDA found that the procurement procedures used in the barbeque sauce bid were followed with two exceptions. *See* Doc. 30-11 at 2. According to an email from an official with the USDA to

Barrett, the two elements of non-compliance were that the ALDOE could not provide documentation that Brooks was notified of the taste test results and that his appeal rights were explained to him. Doc. 30-11 at 2.

As noted above, Brooks' sole argument under 2 C.F.R. § 200.319 is that the taste tests were not conducted. He has not created a sufficient question of fact on this point. Even if the court expanded the scope of the alleged violation to include a theory that there were other violations of state procedure as identified by the USDA, Brooks could abrogate Fulton and Barrett's qualified immunity only by showing that these violations of law were clearly established. *Harlow*, 457 U.S. at 818.

The Eleventh Circuit has articulated three ways in which individual state defendants may receive "fair notice" that their conduct violates clearly established law. *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002). One of these occurs when the words of a statute alone are "specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity." *Collier v. Dickinson*, 477 F.3d 1306, 1312 (11th Cir. 2007) (citing *Vinyard*, 311 F.3d at 1350). Second, if the conduct at issue is not so egregious as to violate a federal statute on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *Vinyard*, 311 F.3d at 1351. The third scenario occurs when the circumstances facing the official are "materially similar" to those of a fact-specific case such that precedent clearly establishes the applicable law. *Id.* at 1352.

In this case, the regulation at issue speaks to competitive bidding, but does not set forth the state procedural requirements Brooks challenges. This is not a situation in which

the statutory provisions "standing alone, provide fair warning." *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1301 (11th Cir. 1998). Instead, the violation alleged here is more akin to a violation of a broadly stated right, and the "Supreme Court has concluded that administrative regulations, in and of themselves, do not provide sufficient notice to override officials' qualified immunity when the plaintiff alleges a violation of broadly conceived constitutional rights." *Id.* at 1303. This court also is not aware of any case precedent for the proposition that failing to document that a bidder was provided the results of the taste test and his appeal rights, as noted in the USDA letter, is a violation of federal rights, or otherwise to establish the broad statements of principle violated here. *See Vinyard*, 311 F.3d at 1352. The court concludes, therefore, that Barrett and Fulton are entitled to qualified immunity on the regulatory claim asserted against them in their individual capacities, and that summary judgment is due to be GRANTED on this alternative basis.

Brooks also has failed to demonstrate entitlement to prospective injunctive relief on the 2 C.F.R. § 200.319 claim against Barrett and Fulton in their official capacities. Barrett and Fulton, in their capacities as officials of the ALDOE, are "state officials" as to whom the Eleventh Amendment bars Brooks' § 1983 lawsuit for monetary damages. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), there is an exception to Eleventh Amendment immunity which allows suits against state officers seeking prospective equitable relief to end continuing violations of federal law. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999). As to claims against Fulton in his official capacity, the motion for summary judgment is due to

be GRANTED as to the claim for prospective injunctive relief because it is apparently undisputed that Fulton no longer works for the ALDOE and is no longer a state agent. *Cf. Thomas v. Devries*, 834 F. Supp. 398, 401 (M.D. Ga. 1993), *aff'd*, 36 F.3d 95 (11th Cir. 1994) (stating that the court is without jurisdiction to provide injunctive relief from harms associated with past constitutional violations).

As to Barrett, Brooks "must show that he faces a substantial likelihood of injury in the future." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). The equitable remedy is unavailable absent a showing of "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The defendants provide evidence that the last invitation to bid relating to a barbeque sauce occurred in December 2015 and the contract began on June 1, 2016. Doc. 25-1. Barrett and Fulton argue that not only was the bid awarded, but the last contract has been extended once and likely will be extended again, but if it is not extended then the earliest another invitation to bid will be issued is sometime in 2019. Doc. 25-1.

Brooks argues that irreparable injury may be presumed in an unfair competition case. Even accepting that proposition, the injunction at issue does not regard unfair competition, but merely amounts to a request to provide Brooks with appropriate information when there is an invitation to bid in the future. This is not a situation in which a low bidder was denied a bid that has not been awarded, *see, e.g., Clark Const. Co. v. Pena*, 930 F. Supp. 1470, 1480 (M.D. Ala. 1996) (finding that low bidder who would not

be awarded the contract will suffer a real—not conjectural or hypothetical—injury and that, in the absence of an injunction, the injury will be continual). Instead, Brooks is asking for relief in the future based on a past alleged violation. The court cannot conclude that Brooks has shown that he faces a substantial likelihood of injury in the future. *Wooden*, 247 F.3d at 1284. Accordingly, summary judgment is due to Barrett and Fulton in their official capacities on the regulatory claim on this alternative basis.

Having concluded that summary judgment is due the defendants on all federal claims, the court further concludes that the motion for preliminary injunction as to those claims is due to be DENIED. *See McDonald's Corp*, 147 F.3d at 1306.

### 2.       *State-Law Claims*

Brooks brings state-law claims for a violation of Alabama Code § 41-16-54 and negligence. This court has federal question jurisdiction over Brooks' federal claims and could exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367. However, under 28 U.S.C. § 1367(c), the court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state-law claims where the court has dismissed all claims over which it had original jurisdiction. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). When all of the federal claims have been dismissed before trial, Supreme Court precedent "strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator–Frye, Inc*., 735 F.2d 414, 428 (11th Cir. 1984). A federal court must examine four factors in deciding whether to exercise supplemental jurisdiction over remaining state-law claims: comity, convenience, fairness, and judicial economy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The adjudication of Brooks' state-law claims, particularly the state statutory claim, will require the resolution of issues of state regulatory law and availability of remedy. State courts are in the best position to resolve these issues. *Baggett*, 117 F.3d at 1352. The court finds, therefore, that judicial economy, fairness, convenience, and comity weigh in favor of having Brooks' state-law claims decided by the state courts. Accordingly, the court will decline to exercise supplemental jurisdiction over those claims.

### C.    Motion for Sanctions

Barrett and Fulton move for sanctions based on Brooks' first amended complaint. They argue that the court directed Brooks to file the amended complaint to clarify whether he sought prospective injunctive relief, but also informed Brooks that he should only claim prospective injunctive relief if he could demonstrate a substantial likelihood of injury in the future. Barrett and Fulton argue that Brooks' claim for prospective injunctive relief is frivolous.

A district court may impose sanctions under Rule 11 when a party files a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success . . . ; [or] (3) is filed in bad faith for an improper purpose." *Silva*, 898 F.3d at 1341. In his response to this court's Order to show cause why sanctions ought not be awarded, Brooks addressed the pending motion to compel, which he concedes is premature, as noted above, but Brooks did not address the request for sanctions stemming from his request for prospective injunctive relief in his amended complaint.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Lopez v. Yvette Pereyra Ans, M.D., P.A.*, 2010 WL 555918, at *1 (S.D. Fla. Feb. 11, 2010).

"Rule 11 sanctions are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Rule 11 contemplates "some prefiling inquiry into both the facts and law," but "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Brown v. Consol. Freightway*, 152 F.R.D. 656, 660 (N.D. Ga. 1993) (quoting Advisory Committee Note to Rule 11). Although Brooks' request for preliminary injunctive relief does not have a reasonable likelihood of success on the basis of his federal claims, the court does not conclude that the standard for imposing sanctions has been met where a determination has not yet been made on his state-law claims. Therefore, the court declines to impose Rule 11 sanctions.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.      The Motion for Preliminary Injunction filed by Plaintiff Martin Brooks (Doc. 22) is DENIED as to his federal claims.

2.      The Motion for Summary Judgment filed by Defendants June Barrett and Perry Fulton (Doc. 27) is GRANTED as to the federal claims.

3.      The court declines to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c) and those claims are dismissed without prejudice.

4.      The Motion to Compel (Doc. 35) is DENIED.

5.      The Motion for Sanctions (Doc. 43) is DENIED.

A separate final judgment will be entered.

DONE on the 15th day of November, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE